versus Tomko. Mr. Hockman. Good morning. Good morning. Good morning, Chief Justice Sirica. May it please the court. My name is Nathan Hockman. I'm the Assistant Attorney General for the Tax Division. I represent the United States, the appellant in this matter. In every criminal tax sentencing hearing, throughout every court in the Third Amendment plan, the courtrooms are absolutely packed. There's the judge, the court reporter, and the court clerk, the defendant, his defense counsel, family, and friends, the federal prosecutor, and the IRS agent. And stuffed into every nook and cranny of the gallery, with their faces pressed against the glass, are 136 million taxpayers who want to see if justice is going to be done in that courtroom that day. They want to see if they have to go through the time, expense, and effort of accurately filing their tax return, and actually paying their taxes, if the people who don't do that get punished. Because if they don't get punished, it questions the fairness of the system. It questions the deterrence of the consequences. Because if there are no consequences, it goes into the calculation of whether they're going to do it correctly in the first place. This case, Mr. Tomko's case, brings this question to the fore in a very startling and dramatic way. Because if Mr. Tomko, an individual who just didn't file one false return, but filed three, during three successive years, an individual who didn't fail to pay just hundreds of dollars of tax, or thousands, or even tens of thousands of dollars of tax, but hundreds of but coerced 12 subcontractors, who he threatened not to pay, to submit false invoices on school projects instead of his own home. If someone like Mr. Tomko, who didn't need the money, I mean the district court was clear he was a very wealthy individual who did this for avarice or greed. He didn't need the money to put food on the table for his family. He didn't need the money to keep his business afloat. If someone like Mr. Tomko, who again didn't voluntarily withdraw from the conspiracy, didn't file immediately amend returns and have a pang of conscience, but waited to see if the IRS would catch him. If someone like Mr. Tomko can escape punishment, escape in prison, and be sentenced, as the panel majority said, to his gilded cage, an 8,000 square foot mansion, multi-million dollar mansion, as his punishment for committing this sophisticated, multi-year, multi-hundred thousand dollar, coercive subcontractor crimes, then there is no deterrence in the system. This sentence doesn't promote the aims of sentencing, the four aims. Respect for the law. This sentence promotes, if anything, disrespect for the law. It doesn't show just punishment. In fact, it shows an unjust punishment. It doesn't show the seriousness of the offense. In fact, it makes the offense look like a joke. And it doesn't promote general deterrence. And general deterrence, both Congress and the Sentencing Commission have said, is a primary importance, not the only thing of importance, but a primary importance in tax prosecutions. And why? The numbers actually reveal the answer to the why question. 136 million taxpayers file 240 million returns every year. This is the unique obligation every American, basically, an adult working American, has every single year in their entire life. There is no other obligation like that in the criminal code, or even in the civil code that we have, that affects so many people and gives them the opportunity every year to potentially commit tax evasion. There is no other crime like that. And when you factor in then the resources that enforce it, we're dealing with a voluntary self-assessment system. The government isn't sending you a bill to pay. They count on you to accurately determine what your tax should be and then put it down on a piece of paper, sign it under penalty of perjury, and pay the taxes. And what is the enforcement mechanism? Well, one to three percent of all returns are going to be audited. Put differently, 97 to 99 percent of the returns will not be audited. We have roughly a thousand criminal convictions. Put differently, that's roughly a 0.001 percent chance that you're going to be criminally convicted. Conversely, there's a 99.99 percent chance you're not going to be criminally convicted. We're dealing right now with a tax gap. In essence, there's 84 percent of taxpayers who have been assessed to be compliant and 16 percent are not. That translates into $400 billion roughly every single year. So the consequences for criminal cases when they're brought, and when you finally get that conviction on some of the highest standards our criminal system has to impose on the government, and rightfully so, you need to achieve deterrence with each and every one of these convictions. Mr. Hochman, I don't know if your time's up or not, but why don't you get to the point that's really the crux of this case. Your argument, I take it, has been that this sentence is unreasonable. That's what you were saying in that five-minute oratory. But would you tell us under the cases that we're bound by, why this sentence was substantively unreasonable? In order to determine substantive unreasonableness, you first need to, there's an interplay with procedural reasonableness as well. The district court in this case did not take into account general deterrence, and that's quite honestly why I spent so much time on it, to show the importance of general deterrence in a tax case. That's all you spent your time on. I assume you're not a fan of individualized sentencing determinations. No. Why not just incapacitate everybody who commits this offense? We'll see what the maximum is. We'll sentence everybody to the maximum, and that will address everything that you said during your argument. Give everybody five years, 10 years, 15 years. The relief we are seeking in this case is extremely narrow. It's only two things, and they're very narrow. One, that the district court made a procedural error in not taking into account at all general deterrence. And two- How do you know that? Didn't the district court explicitly use the word deterrence after imposition of the sentence? Yes, the district court used the word deterrence, but if you look at the way the district court had interpreted the word deterrence earlier in the sentence, when it actually cited the factor of affording adequate deterrence, the only thing the district court then relied on was the fact that the defendant had one minor alcohol-related conviction and nothing else, which is a specific deterrence. Do you really think that an experienced trial judge, any trial judge for that matter, does not take into account the issue of general deterrence in virtually every sentence, not just sentences imposed in tax cases, virtually every sentence? It's sort of the elephant in the room. Especially when you talk about what a serious crime it is, and you mentioned what a serious crime it is. The Third Circuit's case law is very clear that he can't just think about it in his head when the argument has been, he has to meaningfully consider it on the record. Mr. Huffman, 3553A has seven factors and numerous subparts. Only one of the subparts deals with general deterrence, and your entire brief deals only with deterrence and doesn't mention any other factor that the district court considered, suggesting that it considered every other factor and came to a reasoned decision, and I suggest it also considered deterrence. The whole brief is about general deterrence. Yes, and again- This district judge did wrong in your mind aside from being procedurally unreasonable and substantively unreasonable as to general deterrence. Let me just stop you right at the first part of Judge Berry's question. Even if we found that this sentence was procedurally unreasonable, assume that, and that's what most of your brief addressed, what does that get you? It gets you back to the district court who now has to meaningfully consider general deterrence, which is a shall factor for the Congress's- Then you're back here on substantive unreasonable. Well, again, let me make it very clear what we view as substantively unreasonable. What we view as substantively unreasonable is the home detention part of the sentence that put this very defendant in the home that the taxpayers built for them. Let's focus on that. What if the guideline here at the bottom end of the guideline was here? He got three years probation and a year house arrest. So there's a lot of language about this great variance from the guideline. And I don't mean to suggest that the guideline is the co-equal factor that is more equal than all others, although that's the way it is. So he got one year confinement. The guidelines are for a year confinement. What if he had been confined to house arrest someplace else? Let's assume he owned a semi-utilized cabin somewhere. No running water. He liked to rough it, if you know what I mean. He had a cabin out in the woods with no window or plumbing. What if he had served house arrest in that cabin with no outdoor plumbing? Would your argument be the same? It would be a different argument. Are you arguing that he was incarcerated or confined to the house where all of the tax benefits went? That's correct. Which one is it? That the argument relies on... He clearly was confined, not house arrest. That's your argument. Correct. All right. So what's all this business about the thousands of taxpayers peering through the glass and all this stuff about... Why do you have to keep dirtying him up? You cannot use the phrase in your... You do not use the phrase in your brief, except perhaps one or two times, home confinement or home detention without having added to it the very same 8,000 square foot mansion Tom co-filled through this fraud for which he was convicted. And the reason we... It's the house that gets you, right? It's the house. Yes. You don't care about home confinement for some guy who, like the rest of us, doesn't have a lot of money and has a simple house. Unless the tax crime, the basis of what that defendant pled guilty to, the tax money went in to build his house. It doesn't have to be a gilded cage. It comes whether it was reasonable for the district court to do what he did, where the place of the home confinement is the house that was unduly renovated by taxpayer funds. That's the issue. That's the outrageous part. Why isn't that reasonable? He gets a year of confinement of house arrest, three years of probation. The court has told us in Rita that probation is a limitation on liberty. It's not to be looked at as no penalty at all. So in essence, he got three years of confinement or restriction of liberty. He could have gotten one year of liberty and he'd have been happy as a pea in a pod because that would have been a guideline sentence. What's unreasonable about what the district court did? In fact, when do you answer the concern for parsimony that's built into the guidelines or built into 3553A? You give the least sentence that will achieve the objectives of sentencing. Right. The most sufficient but not greater than necessary signs. What's unreasonable about this and why it's outside the range of reasonableness. In fact, the courts have called that a variety of things, a zone of reasonableness, a range of reasonableness, permissible bounds of reasonableness. Metaphors have been used, calling it the recipe of reasonableness, even a donut hole of reasonableness. What's unreasonable about this? What's unreasonable about this is that this is the, to the extent that the sentence sends an outrageous message, that you can do this entire tax crime and end up back in the sentence, back in the very home that the taxpayers built for you, that is the unreasonableness of the sentence. Was it reasonable for the district court to factor into its decision the charitable contributions that he made and continue to make after he was indicted? The district court certainly had the wherewithal to make this part of its analysis, yes. Well, it seemed to move the, that was a substantial factor that the district court factored into its decision making on sentencing. Was that reasonable or unreasonable? That was a, that led to its decision. We would say it's a, it's a factor that the district court. Was it reasonable or unreasonable? It was a reasonable factor for the district court. Did it use it more than it should have, or shouldn't it have used it at all? The district court, it was entitled to give it whatever weight the district court wanted. Obviously, the district court gave it a lot of weight. Now, is that, is that part of your argument that, for the substantive unreasonableness of the sentence? What we're saying is for the totality of the circumstances, not just even the. You're not saying that. You're not. The only factor you talked about in your whole brief is general deterrence, and your substantive reasonable, reasonableness point is in one paragraph on the last page. Again, that's because there's a direct interplay between general deterrence. Thank you. I wanted to return that. Thank you. I wanted to return you to that because as I thought about this argument, I precisely wanted to ask you about that. We all know what Gall and the subsequent jurisprudence tells us about this kind of bifurcation between procedural reasonableness and substantive reasonableness. It strikes me, speaking only for myself, that it's not quite that easy to compartmentalize, and at the beginning of your argument, or close to the beginning and right now, you have repeated that there is a kind of interplay between the two. I would agree with you on that. You've also centered so much of your position on the importance of general deterrence, and the fact that that was a consideration, in your view, that was not considered or adequately considered here. Am I correct? Yes. Doesn't it occur to you that if a district judge tracks all or most of the 3553A factors in detail, as this district judge did, and thereby covers a record, makes a public record fully explaining why the sentence imposed meets the statutory requirements in his view, has he not, by that effort alone, adequately performed, vindicated the obligation also to set out reasons for general deterrence that will satisfy those millions of people peering through the glass into the sentencing proceeding? Hasn't he, through public expression in an open courtroom of all these other factors, even if general deterrence is not explicitly iterated, and I believe it was by at least reference to the word deterrence here, doesn't that, to some extent, fulfill the general deterrence requirement that you are so concerned about? No, it doesn't. And the reason it doesn't is that... That would be the answer. The reason it doesn't is that the court has made clear that the words meaningful precede the word consideration, that in order for this court to perform its function on appellate review, in order for the public, and this comes from Rita, to find the perception of fairness in sentencing, those 136 million taxpayers, we see that in Rita, Booker, Gall, and Kimbrough, the perception of public fairness, the meaningful review on factors that are both legally meritorious, for which there is a factual basis, to which one of the parties has brought to the court's attention, the court is obligated, that is the word from Levinson, obligated to meaningfully consider and respond to that factor on the record. Mr. Hodgkin, you have not suggested that the court did not meaningfully consider any factor under 3553A except general deterrence. That's correct. All right. After it did a meaningful consideration of every factor, under 3553A, except, you argue, general deterrence, it reached, it granted a 12-month downward variance. Do you press your contention, twice made in your brief, that this sentence, quote, brings disrepute to the courts of this circuit? Do you press that? The sentence of putting a defendant... The answer is yes or no. Yes. And the reason is, and that is the whole basis for our substantive unreasonableness narrow request. We're not saying that there isn't any other sentence that this judge could have given. And by the way, this judge determined the following. He determined that straight probation was inappropriate. Straight probation with 250 hours of community service, also not sufficient but greater than necessary. Straight probation with $250,000 fine on top of that, also not sufficient. He figured confinement was appropriate. As far as to me, like a very reasonable analysis of 3553A. But the last part... Probation by itself is not enough. Probation and a fine, a big fine, quarter of a million dollar fine, that's not enough. House arrest has got to be added to that. And you're concerned about where that house arrest is to be served. When you finished your sentence, I thought you were in the middle of something. My colleague, Doug McKee. The small, narrow portion... We're at the end of it, yeah. Right. The small, narrow portion that we believe is outside the bandwidth of reasonableness is putting this defendant in a home that the taxpayers built or helped build for him. That's what we're saying. And to the extent that the court were to... The tax is not being paid back? The tax deficiency that he owed, isn't that being paid back? I assume with interest and penalty. At some point, yes. If we put him in a house other than the gilded cage, then the appeals move, right? If it goes back down to the district court, and the district court gives him some other sentence... Put him in another house. A halfway house. Would one of his construction trailers do? One could argue maybe one of those Habitat for Humanity buildings that he was building in New Orleans could do. Yeah, I'll do that. You're arguing this case as if we are the sentencing department. Right, right. Okay, we're not. We're the reviewing department. And the Supreme Court and Booker and Rita and Gall gave us a job to do. They said we're supposed to look to see if the sentence was procedurally proper and whether or not it was substantively reasonable. Would you just tell us in your remaining time how we'd look at this sentence and make a determination as to whether or not it's substantively reasonable or unreasonable? You would need to look at the component that we have focused on, the home confinement component of the sentence, and ask yourself whether or not that promotes the four goals of sentencing. Promotion for respect for the law, reflecting the seriousness of the offense, general deterrence, and just punishment. We would submit... Now hold on, hold on a second. We do it under a deferential abuse of discretion standard. Please answer the question. Under a deferential abuse of discretion standard, this court has to determine what's reasonable. In order to determine what's reasonable, the court has to establish for itself in every case the range of reasonableness in order to then say this is unreasonable. Now it'll be a rare case... Don't we have to look and see what factors justify a variance here from a sentence of incarceration? Because isn't that what the guidelines called for 12 to 18 months? Isn't that what we have to look at? That is certainly a starting point for the sentence. You start with the guideline analysis. I'm sorry. You start with the guideline analysis. It's never supposed to leave the analysis. We have to find what justifies the variance, do we not? Correct. And if you look at the record, and you can look very hard at the record, and ask in the record what this district court said to show that it meaningfully considered general deterrence, how putting this defendant in, as the panel majority wrote, the gilded cage... Judge, Mr. Hochman, we understand your position. Thank you very much. Thank you very much. Mr. Johnson. Chief Judge. Members of the en banc court. My name is Jerry Johnson. I represent Fuyu Tomko. I've represented him since 2001. Let me say this to begin with. We're here really for one reason, and that's because of the Gall case. Gall made it very clear that post-Booker, the standard of review, and I've heard many of you refer to this today, I'm glad I have, is abuse of discretion. Indeed, Justice Stevens, writing for the majority, stated, our explanation of reasonableness review in the Booker opinion made it elucidly clear that familiar abuse of discretion, standard of review now applies to appellate review of sentencing decisions. Also, the Gall court came down and clarified some other issues that have been problematic, certainly for the courts, for the prosecution, and the defendants. The district court's decision to bury need not be supported by extraordinary factors, nor guided by mathematical formulas that often come into play when somebody could be going to jail and all of a sudden they get home detention, house arrest, probation. That has been rejected. And said that although a major variant should be supported, that a major variant should be supported by significant factors. I suggest in this particular case that the three-level 12-month variance was not a major variance. The Supreme Court also emphasized that since guidelines are not mandatory, which we've known now for some years, that district courts range under their discretionary power is significantly broadened. And that probation was appropriate in the appropriate case. Prior to sentencing the defendant, there were, by the defense, numerous memorandums submitted. We were right in that period of time where when the indictment came down, Booker had not gone down. The district court judges, some of them, decided instead to continue these cases at our request to see what Booker was going to say. We were fortunate enough to have a ruling in our favor concerning that. A lot of other defendants in the Western District were the same, and I suppose all over the country. We analyzed the 3553 factors as best we could back then, and the government submitted nothing in response. Nor did the government file a written objection to Mr. Tomko's request for a downward, post-Booker, downward variance. At the sentencing hearing, the government argued, and it was... Well, you've read it. I don't have to characterize it. Judge Lancaster should send a message that jail is the only deterrence for tax cheats. In the government's reply brief on the 11th hour, the government argued, really for the first time other than passing in their original brief, that the court did not meaningfully consider deterrence. In fact, what the government is arguing is that the judge did not agree that all tax violators should go to prison. In addressing probation, Gall emphasized that probation indeed is a restriction. When I worked for the government as a prosecutor, I had no idea how restrictive probation could be, and I learned a lesson, and I've been learning it for the last 19 years since I left the government. It can be restrictive depending on the person. Gall said it is a restriction of liberty. And a good point was made by here, by a number of the judges here that is very important. When we talk about the sentence in this case, because a number of cases I'm sure that you've all sat on, some of you have written the majority opinions, involve cases where there are level 15 or 17 falling into a high category that very down to straight probation. Some of them got three months home detention, and the difference obviously is you can go out and work when you have a home detention. Mr. Tomko also got house arrest. It was the first time I've ever dealt with it. When I came back to the office after that, I said to my partner, Ms. Eddie, I said, did he get home detention or he's going to make him stay in the house? He said he's got to stay in the house. I thought it's never happened to me before. Fortunately, I didn't have to spend a year like that. He also got 28 days inpatient rehab for alcohol. As Judge Smith said, maybe that was his way of saying you're going to get some time because it obviously wasn't a pleasant experience. This court should give due deference to the district court. Judge Lancaster was best situated to determine the facts relevant to these 35, 53 factors, and he did. 10 pages in the transcript. This court should affirm the district court's decision. Mr. Johnson, let me ask you just a direct question. You acknowledged that in the calculation of the guideline range of this sentence, the guideline range called for a period of incarceration of 12 to 18 months. It did, Your Honor. No question about it. No question whatsoever. What factors given by the district court in its decision do you believe justify the variance from the guideline range to the sentence imposed? I think, number one, the fact that the guidelines were now advisory, and because of that, brought with it 35, 53 provision, which didn't exist for all intents and purposes before, where you could look at an individual and make a judgment based on that individual how these guidelines should apply. And in this case, it was Mr. Tonko's civic contributions, charitable contributions, the things that he did for... he did anonymously oftentimes for people in the community, Finleyville, and other places like that. Was restitution ordered? It was. Well, actually, we made restitution on the criminal deficiency, which was about $230,000 and change, and then they turned it over, as you noted, to the collection folks at the IRS, and we have paid the principal interest and penalties on that. So would you say, then, that the only 35, 53a factors that justified the variance would be the civic contributions and the charitable contributions? No, exceptional acceptance of responsibility was also another one. Where did the court say that in its... We paid the money back, number one. That was post-sentence, though. No, we paid the money back before the sentencing. My question was, Mr. Johnson, was what factors did the district court give in its decision that justified the variance? Those factors. Okay, so you're saying civic contribution and the charitable... Yes, and there was one more, if I'm not mistaken. Lack of significant criminal... That was one, yes, Your Honor. So the reasons were iterated in ticking off the various 35, 53a factors itself. Is that what you're saying? Right down the line. Right down the line. There was not a separate explanation of the variance, but rather it was within or implicit to the 35, 53a factors. There was no question about that. He even referred to them, Judge. Mr. Johnson, you've provided us recently with a 28j and a recent D.C. circuit decision, very recent decision. And within it, there's a discussion by Judge Kavanaugh of the substantive reasonableness inquiry. And in that discussion, he says, analytical difficulty arises because determining whether a sentence is unreasonably high or unreasonably low raises a subsidiary question. Compared to what? Did the government at the time of sentencing come forward and provide any basis for such a comparison? The reason I asked is because I expected today to hear more about why this was not the mine run case, which is what I'd read previously in the papers. I expected to hear more about whether or not this was the typical case. Was there anything said or argued by the government before the district court as to why this was not the typical tax case, whatever that is? No. To the contrary, the argument was this was a tax cheat. This was a case that begged out for prison. And in addition to that, it was very, the statement was very intense. I'm not criticizing the assistant United States attorney. It was over the top. At a time when our soldiers are risking their very lives for this country, Mr. Topko can't bring himself to pay his country what's rightfully owed. It didn't get a lot better, as you know. Did the decision allow the defendant, in effect, to buy his way out of jail? What is the message if the next defendant involved in tax cheating doesn't have the charitable, doesn't have the means, he's not as well healed, he's going to go to jail because he can't show a record of making these contributions? No, he's probably not going to have enough of an income to evade that much tax to be blunt with you. People evade taxes. No, no, no. People avoid tax and evade tax who don't have the money that this defendant had. And if they can't make the charitable contributions that your client made, that can't be factored in as Judge Lancaster factored in these contributions to the sentencing. But those weren't things that, in answer to your question, Judge Cowan, those weren't things that Judge Lancaster came up with from whole cloth. Those were things that were promulgated by the United States Sentencing Commission as things that could be considered. And after Booker, those things took on more significance because there was a broader range under considering the background and characteristics of the defendant, which previous to that, as you all know, was confined in a very small area. He increased his charitable contributions or donations and so forth after he was indicted, though. He was well counseled in that regard, I take it. Uh, you know, let me put it this way. I told him to pay his taxes without violating anything. I said, do it. And I'll tell you something about the, uh... And volunteer for habit. The other work, too, is what is suggested. Let me tell you. Let me tell you. No defendant can do that, kid. Pardon me? Why do you have to be wealthy to work for habit? Anybody could. Not if you got to make a living, you can't. Not too easily. Well, uh... You can do something. Mr. Johnson, speaking of something, what in the record and perhaps from the various letters that were offered is suggestive of pre-indictment charitable activity on the part of Mr. Tompkins? There were over 56 letters from various people. Friends, relatives, people in the community, clergy, people who were his competitors, if I'm not mistaken, union officials. And Bill Tomko is a person that gives because he does have money. But my question is, were there references in any of those letters to pre-indictment charitable or similar activity in the community? Oh, I think most of them that referenced that had to do with pre-indictment. The post-indictment issue has to do with habitat for humanity. That was my point. Right. I wanted to separate. Before that, he didn't do anything for habitat for humanity. And I think once he got indicted, frankly, and I had this happen with a number of clients, they don't know what to do. They're so scared. But my feeling is if you're going to ask for home detention or probation, part of that's going to be community service. So let's get out and find a place and start working. I think it's good for a lot of reasons. Let me ask you a question if I could. I'm sorry. Under the pre-Booker regime, and I'm just a matter of recollection, weren't these kinds of considerations not permitted to be taken into account in sentencing? I'm trying to think. I mean, I sentenced under that regime. I think they could if they were raised. I don't think. I think they were viewed as not your standard considerations. And here we have a situation where this is pretty much dictating. These types of considerations are dictating the result, are they not? You mean the sentencing guidelines? Well, I mean, under the sentencing guidelines, your charitable and community service really wasn't supposed to be considered. Oh, no, no. It had to be extraordinary before. Where the sentencing judge has pretty much rested the entire justification on this charitable and civic service. And I'm just wondering whether Congress or somebody is going to react and say, wait a minute, you're going off the reservation here because the sentencing guidelines, granted they're only advisory now, but you can't take something that was not permitted in normal circumstances to be used and make it the be-all and end-all of the reasoning. It had to be extraordinary. So did many other things have to be extraordinary. It had to be extraordinary. Exactly. Even if it's arguably extraordinary, isn't it dictating as compared to seriousness of the offense, respect for law, just punishment, need to avoid unwanted sentencing disparities? And I, you know, your opponent has said he's limited to deterrence, but I'm looking at 3553 and finding a lot of other things that weren't mentioned and that are supposed to be mentioned by statute. And the rationale for the sentence is something that under pre-Booker, we weren't even supposed to really consider that much. But with Booker, obviously came a trade-off. And the trade-off was if we're going to keep these things and call them constitutional, OK, we got to do something. And what we have to do is this. One thing we could do is judge, as a number of the dissenting judges said, is these things are unconstitutional. Judges cannot find facts. That's for a jury to do. Now, wait a second. Now, let's be practical. How are we going to start this whole thing up again? Somebody has an idea. You know what? We'll make them advisory. But isn't the real thing that we're supposed to do now, post-Booker, is to avoid unwarranted sentencing disparities? In order to really comply with the spirit of the guidelines, we still need to concern ourselves. And isn't there a real problem here with the sentencing disparity for your run-of-the-mill, run-of-the-mill tax crime? This is not like Gaul, where you have a situation where you withdrew from a conspiracy within seven months and they arrested him 20 years, 10 years later, whatever. We have a run-of-the-mill tax evasion case. The next one coming down the line who doesn't have the charity, what are we to do with the sentencing disparity that is going to exist here? Well, let me respond to that as the Assistant Solicitor General did in the Gaul argument. When they started talking about what are they going to do under these circumstances in Gaul? And he said, by virtue of making these things or calling them constitutional, the guidelines under Booker, we're going to have to pay some prices. And one of them, because sentences are going to be more individual, is going to be disparity. And it's a given. Now, your question is... You don't really have a disparity because the next guy who comes down the pike is not going to have withdrawn from a conspiracy in seven months. He's not going to have done the incredible rehabilitation and be pulled in. And if he is, that's the nature of his offense. He'll probably get the same thing as Gaul does. So I don't think there is a disparity. Here, tell me what's different about this crime that the next guy coming down the pike based upon this crime is going to be able to argue, you know, I really should have home detention because that's what you've been giving out for this crime. As have a number of the circuit opinions and across the country now. And I'm not trying to avoid your question. Are these mine run cases? Pretty much, they are. But we can't lose sight of the fact that we have given up the mandatory sentences of the guidelines which were draconian at best for those of us who deal with them and probably for a lot of you. They turned the judges, with all due respect to the district court judges, into clerks because the government ran the show. Before this is over, can I ask you if you could go back to Judge Fisher's question, which if I'm remembering correctly, was where's the record about general deterrence? At least that's my question. I shouldn't attribute it to anybody else. I'd like you to respond directly to Mr. Hockman's argument, which is, hey, this ignores general deterrence. Rebut that. Tell us where Judge Lancaster addressed this in a way that's meaningful so that we could say, yeah, meaningfully considered. He did it three ways. The first was when he talked about deterring a particular defendant, in this situation, Bill Tomko, that is not mutually exclusive from deterrence generally. That's my opinion. That's number one. Number two, after he went into, after everybody had an opportunity to speak. What did he say about specific deterrence that you say also constitutes general deterrence? He said at the end of his opinion after going through what he went through, that he felt that that satisfied three factors. One of which was deterrence. There's no term of general deterrence in 3553, but it was deterrence. It wasn't that there was a discussion. It was that he said, I feel this satisfies deterrence. That's your first point. After the sentence, but let me take it a step further if I might. The other thing that's very important here is this. If the judge would have come out and said, you're getting 12 months or 18 months, whatever was in the range. Nobody would be complaining. Hey, that's what we wanted. But what he did was more than was done to other people in life circumstances and tax cases. And that was to say, I'm going to give you home detention. You're going to live in your house, but you know what? You can't go to work. Now, everybody said, well, we've got phones. People can come up there and so on and so forth. Plumbing inspectors don't come to his house to ask him what he's supposed to do. Vendors aren't necessarily going to come to his house and do that. He's a person that doesn't go to work in the morning in a suit and tie like most of us. He goes in boots because he's out in the dirt and he's still very crucial to that business. How could it be reasonable, though, for a defendant to be sentenced to a house which he stole with the government money, in effect? Well, that is the question. And where is the general deterrence if that is what the result is? He's sentenced to a golden cage, a gilded cage, which he built with stolen money. Well, the government says he built the whole house for all intents and purposes. The tax deficiency was $230,000. But I'm not quibbling with it. So it was $450,000 or something? It was $520,000 plus change. OK, that's a half a million of a vagrant as opposed to a deficient. Wasn't the easy answer? How is it reasonable? Answer my question. Yes, sir. For the public to perceive this as reasonable, were he sentenced to a house which he built in a large measure with money stolen from the government? OK, well, let me talk about being sentenced to a luxurious house because I've given a lot of thought to the fact that you're going to ask me that question. Every summer, my family and I go down to Stone Harbor. And now that I'm in private practice, I can get a little closer to the ocean. We in the Western District have watched your metamorphosis from my government service. We New Jerseyans have seen you, Pennsylvania people, poach on our sacred land. I bet you feel that way. I bet you feel that way. And when we got there, somebody said, you're going to be able to stay here for six months. Somebody's going to run your practice. Cynthia, Eddie's going to run your practice. You've got a lot of time off. But you know what? You're not allowed to leave the house. You can look at the ocean. You can't go out and eat. You get sick and fall over. You can go to the doctor and you can go to church. You're going to get tired of that because all of us crave freedom. If you had a choice between that and jail, which one would you choose? Oh, he didn't have a choice. The judge did in exercising his discretion. I'm sorry. Isn't the easy answer based on the government's argument today that, you know, so maybe he can spend his home confinement in a lesser house because they have no difficulty with that. It's just this house they don't approve of for home confinement. Well, what kind of house would they approve of? Halfway house. A halfway house? Yeah. But that's not... But your honor, they didn't do that. He could have been eligible for... He went down three levels in this case. Okay. That is... Are you talking about the perception of the public that this is a reasonable sentence under 3553? According to the sentences coming out of this court and the panels of the Third Circuit, it's not an unreasonable sentence based on white collar crime. It is more harsh than the sentences that are coming out in the Howe case and cases like that. And I'm not criticizing the Howe case. Weren't there at least five or six additional factors that justified that variance? There were four, yes. Here, you only cited one. No, I said... Well, the additional that I forgot was employment history. How does that distinguish him from anyone else who has a business who stole from the government? Because the people that he works for under the circumstances, there may not be a business there. The minute he was charged, they pulled his line of credit. And the government says in their brief, he had no problem coming up with a 250. Well, that's inaccurate, okay? He didn't have an easy time. They pulled the line of credit. He had to go through 40 banks because he was charged. Not because he was sentenced. Pardon me? That's because he was charged. Exactly. But that was the effect of it. Then if he was going to go away, and I made this argument, if he was going to go away, the chances of that company failing were significant. Isn't every businessman who's involved in tax fraud facing the very same risk for his business? It depends how much it is. And it depends on other factors. Let me give you an example. About three months ago, we handled a case where the tax deficiency was $1.2 million on about $4 million that was evaded. That person got only 18 months in jail because he cooperated, okay? That was the trade-off, so to speak. Yeah, because it seems to be a real answer, not only to this, but the front line of questions is will you have a situation where you have a non-violent defendant who has done some things for the community that really have a pretty high level of social good? They don't necessarily have to have a price tag. His did because he had a construction company. He could have volunteered for work in a soup kitchen or done something else. Or you have a non-violent defendant who has done some things which have a very high social ball and has positively contributed to the community and where Congress has not otherwise mandated a sentence of incarceration. It is not an abuse of the trial judge's discretion if he goes through all the 3533A factors to not incarcerate that person because in that given situation, given the overall contribution to society, as well as the lack of threat to people's safety, it's not an abuse of discretion to not incarcerate. Doesn't that answer the kind of question? It answers the whole line of questions because that's what the sentencing guidelines permit. Does it in the situation of a tax violator? Is that a different situation from the normal white-collar crime conviction? Well, yeah. It's an interesting argument because the government... No, it's an important argument. And I don't disagree with that. Are tax offenses worse than regular white-collar crime, fraud and so on and so forth? I presume that's your question. Not worse, different. And have to be looked at differently because, and you know better than anyone, general deterrence usually doesn't work in the criminal justice system, but it does in certain areas. And this may be one area where it does work. But what you are doing, with all due respect to each one of you, is functioning as a district judge by asking those questions. No, you remember the old system when there was no appellate review of sentences and then we went too far the other direction and now we're coming back. Congress and the Supreme Court still say that we review for reasonableness. And obviously that's an ill-defined term and reasonable people are going to have different views on what that means here. But are you, in effect, saying once the district court goes through the factors by rote that we cannot review I don't think it was by rote, but I do think this. Gall made it elusively clear when I read that I thought that's a little bit strong. Then I had to look up what the word meant. That the circuit judges are not in a position to make the decisions that the district judges have been entrusted with. They are to look for deficiencies where a sentence is to determine if a sentence is unreasonable. That isn't something that was created to help anybody necessarily in a sense that those directions come from the Sentencing Commission and Congress. And I don't know if I'm answering your question, Chief, by responding this way. But if there was strong feeling about mandatory sentences for tax evaders, Congress could do something because all of us know they've never been too shy on coming up with mandatory minimum sentences. Mr. Johnson, thank you very much. Thank you. It was a pleasure to appear before you. It's probably my last time. It was my first, but thank you. Did we say something to offend you? Am I coming back? Mr. Hoffman? Yes. Is the government receding from the position that it took in the district court where I understand it argued for some detention, prison time? And I haven't heard you here nor in your brief argue for prison time. You seem to be arguing that the issue is where where he should be detained. What is the government's position vis-a-vis prison time, the appropriateness of prison time for a tax offender in this kind of case? If this case, and hopefully when this case goes back down to the district court, we will submit that a imprisonment time within the 12 to 18 month guideline guideline range fulfills the missions of sentencing. However, for this circuit court's review, we don't have to go that far. All we have to determine is. Why are you arguing that? I don't understand. Oh, because all we have to determine today is whether or not the sentence actually give it, which included the home detention component that we have focused on is substantively unreasonable or a simpler method is to determine procedurally this district court did not give meaningful consideration to deterrence and send it back down to the district court to give meaningful consideration. Now, we would suggest that we cannot fathom a reason, and maybe that's why it's not in the record, but we should give the district court judge perhaps a chance to put it in the record. How one could put this defendant under this set of facts in this tax case into the very home that the taxpayers helped build for them. What reason there would be? Procedural unreasonableness or error here is actually meaningless because the government's position is no matter if Judge Lancaster spent an hour philosophizing about general deterrence and how it would or wouldn't impact in this case by the sentence he'd previously given. In other words, if he gave it the greatest thought and explicated that at length on the record, it wouldn't make a difference because in the government's view, no matter how you get to this sentence, it's still substantively unreasonable. Is that the position? This exact sentence, yes. Because he can't serve his home confinement in that house. That's why it's substantively unreasonable. Yes. And we would argue, again, we would argue that this is one of those rare cases. The Levinson case talked about that most cases will fit within the range of reasonableness or at least after we hear a judge's articulation of it could probably get there. The Goff case is one of the few cases this court has decided in a child pornography case involving a range of 37 to 46 months, a judge went to four months of imprisonment and this court actually said that is substantively unreasonable going through all the factors. So is your purpose in saying send it back for procedural error, tactical, because once you get there, you're just going to say, judge, we're going to appeal you again if you come up with the same sentence because it's substantively unreasonable. We would say we're saying both. We're saying that on the very narrow ground that we would ask this court to do two things, send it back for a procedural reasonableness grounds and advise the district court that the way he has fashioned the home detention component is substantively unreasonable and any other type of confinement, however, would be reasonable. I just want to make sure I got you right though. If this court were to say, you know what, we think there really wasn't adequate consideration of general deterrence. I'd take another look at this. That in your view gets you where you want to get, but it doesn't end the case because your view is no matter how we got there, it's an unreasonable sentence. So we would really be just sending it back to no good purpose. Is that right? Well, we have tried to again, it's assuming that we couldn't convince the judge when he actually takes general deterrence into consideration that that sentence does not fulfill the mission of general deterrence. We feel that since the judge, with all due respect to Judge Smith, this judge mentions in rote recitation at the very end of his sentence, the court views that this sentence will address the sentencing goals of punishment, deterrence, and rehabilitation. Cooper says that's not enough. When he talks earlier about deterrence, he says, I am to afford adequate deterrence to the defendant's criminal conduct. Here, the defendant has one prior criminal incident, which is alcohol related, but it otherwise led a crime-free life. Well, let me go back to what Judge Jordan, Judge Jordan's point. I mean, I thought I had understood it, and I think you, my understanding is correct. If we were to send it back for more consideration of general deterrence, and after an hour, Judge Lancaster would say, well, I've considered general deterrence, and I'm going to impose the same sentence. You're still not satisfied. That sentence would be served in that house. But you're not suggesting that all tax offenders such as this one should go to jail. I mean, there shouldn't be, effectively, a mandatory minimum of 12 months, right? That's correct. What we're, in essence, saying is, as we sit here today, we cannot, it is a house, we cannot, it's a guilty plea. Let me ask a question about the house, because I'm still puzzled. In light of the fungible nature of money, how do you know that the monies that he cheated the government out of went into the house and didn't go into the stock market or a boat or a car? And did your attorney for the government make a record to demonstrate that? Yes. The reason we know it went into the house is that it dealt with the direct deductions taken by the business, and it was an S-corp business which flowed down to his personal return. They took it as business deductions on school projects as opposed to income to him that would have been, you know, in essence, the business would have paid him money, he would have paid the contractors for personal repair or personal construction of his house. That would have been income to him. We can track $560,000 of these deductions directly into the house. Yes. This appeal is all about, all about, if Judge Lancaster, when he imposed his sentence, had sentenced him to spend his year of confinement at his mother's little house, you would have had, you would not have taken the appeal. It would have been a completely different case, yes. Because it was his mother-in-law. That's a hard issue. Yeah, then we have an 8th Amendment problem. Yeah, it would be a completely different case. That's not an idle question. You would not have taken the appeal. Yeah, it would be, we would not have the compelling arguments that we believe we have in this appeal. And again, what's outwritten... You told me it was the house. We started out here. And you told me, it's the house. If it was someplace else, the judge would have said, the word is Habitat for Humanity Showers. All right, it's the house, in the irony of the house, and you're arguing that there's an appearance there which is contrary to general deterrence. Yes. There are a lot of factors under 3553A. Although we always forget that the guidelines is a one and only one. Deterrence is only one, and only one. It's an important one. But there may well get the circumstances where in order to give what a trial judge thinks is the appropriate weight to one of the 3553A factors, he or she has to give less weight than would otherwise be the case to one of the other 3553A factors. And you're arguing this as though deterrence always trumps everything, and you're measuring deterrence from a starting point, it seems to me, from an implicit given that the guidelines call for at least 12 months of incarceration. And then you're working backwards from that, but that seems to be elevating deterrence and the guidelines over everything else. No, what we're doing, we're certainly saying that given what we believe is the primary consideration, which is that general deterrence has in tax crimes. That is your primary, out of all the 3553A, your primary thing you're focusing on is general deterrence, and that's where it seems to me it's concomitant with the guideline calculation, but there are a lot of other factors that come into play here. If public safety were an issue, it seems to me, deterrence might rise higher on the scale and be less appropriate to minimize, and I'm not saying he didn't minimize it, but it might be less appropriate to minimize deterrence when you weigh the other factors if public safety were factored in than if it were something like the public treasury. At a minimum, what we expect on the record is this discussion we're having today, where this judge says... That wouldn't satisfy you because in answer to Judge Jordan's question, he said even if he had this discussion, waxes philosophical about deterrence, he could even bring out a Dostoevsky and introduce crime and punishment onto the record. If he gave the same sentence after going through all the elucidation about general deterrence, then and gives the same sentence, we'd be right back here and you'd argue the substance of the sentence was unreasonable. Again, the reason I say we would be right back here is I can't fathom a reason this sentence promotes general deterrence. However, if Judge Lancaster in citing a particular section of Dostoevsky can find a reason that makes this sentence what we believe is an outrageous sentence fulfilling the mission of general deterrence, we certainly want to give him the chance. And then whether or not we would be back here before you depends on... If he can find something in Dostoevsky to cite both sides of this proposition, I'd be surprised. But he can't put him back in the house. Again, we would say that that particular sentence is substantively unreasonable and we invite Judge Lancaster to justify any way he can how he gets there. Thank you, Mr. Hochman. Thank you very much. Thank both counsel for an excellent argument. And take the matter under advisement.